James H. Wilkins, #116364
WILKINS, DROLSHAGEN & CZESHINSKI LLP
6785 N. Willow Ave.
Fresno, CA 93710
Telephone: (559)438-2390
Facsimile: (559)438-2393
E-Mail: j.wilkins@wdcllp.com
Attorneys for Plaintiff, CITY OF FRESNO

Linda Bondi Morrison Esq., SBN 210264
Beth E. Yoffie, Esq., SBM 120342
TRESSLER LLP
2 Park Plaza, Suite 1050
Irvine, California 92614
Telephone:  (949) 336-1200
Fax:         (949) 752-0645
E-Mail: lmorrison@tresslerllp.com
        byoffie@tresslerllp.com

Attorneys for Defendant, TOKIO MARINE SPECIALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| CITY OF FRESNO,<br><br>Plaintiff,<br><br>v.<br><br>TOKIO MARINE SPECIALTY INSURANCE COMPANY and DOES 1 to 50, inclusive<br><br>Defendants. | CASE NO. 1:18-CV-00504-LJO-SAB<br><br>**JOINT SCHEDULING REPORT**<br><br>Date: August 28, 2018<br>Time: 2:00 p.m.<br>Ctrm: 9<br>Judge: Honorable Stanley A. Boone |

Plaintiff, City of Fresno ("Plaintiff"), by and through its counsel of record, Wilkins, Drolshagen & Czeshinski, LLP, and Defendant, Tokio Marine Specialty Insurance Company ("Tokio Marine"), by and through its counsel of record, Linda Bondi Morrison of Tressler, LLP, have met and conferred and submit the following Joint Scheduling Report.

///

**1. Summary of Factual and Legal Contentions**

**a. Plaintiff's Contentions**

Plaintiff, CITY OF FRESNO, is a scheduled named insured under the Premises Pollution Liability Coverage policy issued by TOKIO MARINE, Policy No. PPK 1358223, which was in effect at all material times hereto. During the time said policy was in effect contamination claims were asserted against CITY OF FRESNO. Ultimately these claims lead to the filing of two lawsuits in Fresno County Superior court, *Micheli, et. al. vs. City of Fresno*, case number 16CECG023937 and *Flannery, et. al. vs. City of Fresno*, case number 17CECG01724. The CITY OF FRESNO timely tendered the claims to TOKIO MARINE. TOKIO MARINE denied the CITY OF FRESNO's tender of defense and request for coverage. TOKIO MARINE's investigation of the facts and circumstances of the outstanding claims was insufficient, incomplete and biased, and performed with the deliberate design and intent to consider only those facts, or interpretation of said facts, in an attempt to justify its wrongful and improper denial of coverage to The CITY OF FRESNO.

The CITY OF FRESNO has filed this action for breach of contract and insurance bad faith as against TOKIO MARINE, seeking compensatory and punitive damages. The CITY OF FRESNO has and is suffering damages in having incurred and paying for attorney fees and costs in defending the outstanding claims. In addition, the CITY OF FRESNO has and is continuing to suffer damages consisting of attorneys' fees and costs it is incurring in filing and prosecuting the current action in order to obtain the benefits to which the CITY OF FRESNO is and was entitled under THE POLICY. The CITY OF FRESNO contends that the conduct of TOKIO MARINE, was done with fraud, malice and oppression as defined in California Civil Code §3294. As a result, the CITY OF FRESNO is seeking special, general, economic, consequential damages, and punitive damages. The CITY OF FRESNO is also seeking attorneys' fees, prejudgment interest, and costs of suit.

**b. Tokio Marine's Contentions**

The CITY OF FRESNO is an additional named insured on a Premises Pollution Liability Coverage policy issued by TOKIO MARINE, Policy No. PPK 1358223, effective July 1, 2015, to July 1, 2018 ("POLICY"). Under the POLICY, certain environmental exposures are covered and some are not. The claims at issue in the instant litigation are not. Specifically, as to the claims at issue,

the POLICY requires that among other things, "bodily injury" and "property damage" (as those terms are defined in the POLICY) arise out of "contamination on, under or migrating from your insured location." "Your insured location" is a specifically defined term in the POLICY.

In addition, pursuant to an endorsement titled "Extra Expense from Contamination - Water Supply" ("Extra Expense Endorsement") the POLICY states that it will pay for "extra expense" resulting from the "discovery" of "contamination" on, under or migrating from the "insured's" water supply sources for a potable water distribution system, if certain conditions are met.

Here, the CITY OF FRESNO has been sued in the actions filed in the Superior Court of California, Fresno County, styled *Micheli, et. al. v. City of Fresno,* Case No. 16CECG023937, and *Flannery, et. al. v. City of Fresno*, Case No. 17CECG01724 (collectively, "Underlying Actions"). In the Underlying Actions, the plaintiffs have alleged that surface water introduced into the water supplied by the CITY OF FRESNO caused corrosion and damage to homes with galvanized piping. In particular, the Underlying Actions allege that the CITY OF FRESNO has experienced high rates of childhood lead poisoning because it "actively promoted, designed, and approved changes to its water supply systems that it knew would likely lead to the risk of corrosion and leaching of metals in its piping, including the introduction of iron and lead into residents' drinking water." (*Flannery* Complaint, para. 1-2.) The plaintiffs also allege that prior to 2004, the CITY OF FRESNO relied exclusively on groundwater to supply water to its residents. In 2004, it began to use the Northeast Surface Water Treatment Facility ("Treatment Facility") to supply treated surface water to residents. The plaintiffs allege that the CITY OF FRESNO knew that before activating the Treatment Facility, introducing treated surface water into its water supply would likely cause, among other things, corrosion and damage to many homes, would cause degradation in the water's aesthetic quality, and would cause potential water quality issues in the form of increased release of particulates, red water episodes, and the increased corrosion on the base metal of the piping's wall. (*Flannery* Complaint, para. 3.)

Further, the plaintiffs in the Underlying Actions contend that while the groundwater previously supplied by the CITY OF FRESNO was heavily mineralized, the treated surface water has a far lower mineral content, lower overall hardness and a lower chloride and sulfate content. They contend that

3

whereas the previously supplied groundwater did not cause corrosion or harm to the homes or piping systems in Fresno, the treated water has caused and continues to cause such corrosion and harm. (*Flannery* Complaint, para. 31.)

The Treatment Facility from which water was supplied to the underlying plaintiffs qualifies as a "your insured location" under the POLICY.  However, the claims asserted against CITY OF FRESNO in the Underlying Actions do not allege claims for "bodily injury" or "property damage" arising out of "contamination" (as defined in the POLICY) "on, under or migrating from" the Treatment Facility.  Rather, the Underlying Actions allege that the CITY OF FRESNO elected to change the composition of the water supplied to the residents of Fresno.  Specifically, it introduced surface water into the water supply, which lowered the mineral content of the water supplied to the residents, and that changed composition of the water caused corrosion and harm once it reached the galvanized piping in the underlying plaintiffs' homes.  There are no allegations that water supplied by the Treatment Facility itself was contaminated.  Consequently, there can be no potentially covered "bodily injury" or "property damage" arising out of "contamination on, under or migrating from" the Treatment Facility.  Moreover, the Extra Expense Endorsement would not apply because there is no "contamination" "on, under or migrating from" the CITY OF FRESNO's water supply sources for a potable water distribution system.

Assuming, *arguendo*, that a potential for covered "bodily injury" or "property damage" arising out of "contamination on, under or migrating from" the Treatment Facility could be shown, or that the requirements under the Extra Expense Endorsement could be met, additional provisions in the POLICY would likely apply to bar coverage for the Underlying Actions.  The following additional defenses to coverage, among others, would apply:

1.  The POLICY does not provide coverage to CITY OF FRESNO to the extent that any claim was first made against CITY OF FRESNO before the POLICY incepted.

2.  The Non-Disclosed Known Contamination exclusion of the POLICY bars coverage to the extent the alleged "contamination" was known by or reported to a "responsible individual" and not disclosed to TOKIO MARINE.

3.  The Willful Acts Exclusion of the POLICY may bar coverage.

1. 4. "Section VIII. – Duties in the Event of a Claim or Remediation Expense or Discovery of Contamination" of the POLICY may bar coverage, in whole or in part, to the extent that CITY OF FRESNO failed to comply with this provision.

**2. Proposed Amendments to the Pleadings**

The parties do not currently anticipate amendment of their pleadings to add new parties, claims, or defenses, but reserve the right to do so. The parties propose a deadline of October 1, 2018 to amend the pleadings.

**3. Summary of Contested and Uncontested Facts**

    **a. Contested Facts**

        **i. Plaintiff's Contentions**

Whether TOKIO MARINE improperly failed and refused to timely provide policy benefits due and owing to Plaintiff.

Whether TOKIO MARINE failed to properly, promptly, reasonably and adequately handle, investigate and adjust Plaintiff's claim for benefits.

Whether TOKIO MARINE has improperly and unreasonably forced and required Plaintiff to incur the expense and attorney fees in its efforts to secure the benefits due under the policy.

Whether TOKIO MARINE refused to timely pursue reasonable, unbiased, proper investigative and claims handling efforts, and otherwise failed to give Plaintiff's interests as much consideration as its own interests.

Whether TOKIO MARINE refused to treat Plaintiff fairly.

Whether TOKIO MARINE failed to acknowledge and act reasonably and promptly upon communications with Plaintiff.

Whether TOKIO MARINE unreasonably and improperly delegated its sole responsibility to properly, promptly and adequately handle, investigate and adjust the Plaintiff's claim.

Whether TOKIO MARINE based its decision to deny Plaintiff benefits which TOKIO MARINE knew were due and owing, and otherwise denied benefits TOKIO MARINE knew were due and owing on its desire to reduce or otherwise avoid its obligation to the Plaintiff.

///

Whether TOKIO MARINE unreasonably delayed the handling, adjustment, and settlement of Plaintiff's claim for benefits under the Policy, even though the Plaintiff had fully cooperated with TOKIO MARINE's purported investigation and analysis of said claim, and even though TOKIO MARINE was aware that benefits were due and owing to Plaintiff under the Policy.

Whether TOKIO MARINE's actions were in breach of the implied covenant of good faith and fair dealing.

Whether TOKIO MARINE's actions, in denying benefits and forcing Plaintiff to initiate and prosecute this action in order to receive any benefits was done with malice, oppression or fraud, such that Plaintiff is entitled to an award of punitive damages.

The amount of damages to which Plaintiff is entitled as against TOKIO MARINE for its tortious actions and conduct.

All facts required to establish that all of the affirmative defenses asserted by TOKIO MARINE in this action are without merit.

### ii. Tokio Marine's Contentions

TOKIO MARINE's contested facts relate to the following defenses for which it seeks a determination:

Whether the Underlying Actions allege claims against the CITY OF FRESNO for "bodily injury" or "property damage" arising out of "contamination" "on, under or migrating from" the Treatment Facility.

Whether the Extra Expense Endorsement applies.

Whether coverage is barred on the grounds that any claim was first made against CITY OF FRESNO before the POLICY incepted and was not reported to TOKIO MARINE during the POLICY period.

Whether the Non-Disclosed Known Contamination exclusion of the POLICY bars coverage to the extent the alleged "contamination" was known by or reported to a "responsible individual" and not disclosed to TOKIO MARINE.

Whether the Willful Acts Exclusion of the POLICY may bar coverage.

///

Whether "Section VIII. – Duties in the Event of a Claim or Remediation Expense or Discovery of Contamination" of the POLICY bars coverage.

Whether the relief sought in the Underlying Actions falls outside the POLICY's definition of "loss."

Whether the "Other Insurance" condition in the POLICY applies to bar or reduce coverage.

Whether coverage for punitive, exemplary or multiplied damages or any civil or administrative fines, penalties or assessments is barred by virtue of the Civil or Administrative Fines or Penalties Exclusion in the POLICY.

Whether TOKIO MARINE's conduct with respect to the claims was reasonable.

Whether CITY OF FRESNO failed to exercise reasonable diligence, mitigate, minimize or avoid any "loss" it allegedly sustained.

Whether CITY OF FRESNO's claims violate the applicable terms and provisions of the California Insurance Code, including but not limited to Sections 22, 250, and/or 533 and/or California Civil Code section 1668.

Whether CITY OF FRESNO has unclean hands.

Any and all additional facts necessary to establish TOKIO MARINE's affirmative defenses.

**b.      Uncontested Facts**

1**.**     Plaintiff, CITY OF FRESNO, is an additional named insured under the Premises Pollution Liability Coverage policy issued by TOKIO MARINE, Policy No. PPK 1358223, effective from July 1, 2015, to July 1, 2018.   The POLICY has limits of $10,000,000 for "bodily injury" and "property damage" from contamination per contamination incident, subject to a $75,000 self-insured retention.   The POLICY also contains an Extra Expense Endorsement which provides coverage in the amount of $1 million per contamination incident, subject to an SIR.

2.       On September 9, 2016, a lawsuit captioned *Micheli, et. al. v. City of Fresno*, case number 16CECG023937 ("Micheli Action"), was filed in the Fresno County Superior Court. On November 4, 2016, Plaintiffs filed their First Amended Complaint. On February 1, 2017, Plaintiffs filed their Second Amended Complaint.

///

3. On May 17, 2017, a lawsuit captioned *Flannery, et. al. vs. City of Fresno*, case number 17CECG01724 ("Flannery Action"), was filed in the Fresno County Superior Court.

4. CITY OF FRESNO tendered the *Micheli* Action and the *Flannery* Action to TOKIO MARINE under the POLICY.

5. TOKIO MARINE denied CITY OF FRESNO's tender.

**4. Summary of Undisputed and Disputed Legal Issues**

    **a. Undisputed Legal Issues**

Jurisdiction, venue and that California law applies to any substantive issues of law.

    **b. Disputed Legal Issues**

        **i. Plaintiff's Contentions**

1. TOKIO MARINE breached the policy and committed breached the implied covenant of good faith and fair dealing by unreasonably denying Plaintiff benefits and forcing the CITY OF FRESNO to initiate and prosecute this action in order the receive any benefits, and therefore is entitled to damages as against TOKIO MARINE.

2. In unreasonably withholding the benefits and forcing the CITY OF FRESNO to initiate and prosecute this action in order to receive any benefits, and the manner in which it treated Plaintiff and handled Plaintiff's claim, was done with malice, oppression or fraud, such that Plaintiff is entitled to an award of punitive damages.

3. No facts support any of the affirmative defenses asserted by TOKIO MARINE in this action.

        **ii. Tokio Marine's Contentions**

1. TOKIO MARINE did not breach the POLICY.

2. TOKIO MARINE did not breach the implied covenant of good faith and fair dealing.

3. CITY OF FRESNO is not entitled to an award of damages.

4. CITY OF FRESNO is not entitled to an award of attorneys' fees incurred to prosecute this action.

'    5. CITY OF FRESNO is not entitled to an award of punitive damages.

6. TOKIO MARINE's conduct with respect to the claims was reasonable.

7. Persons or entitles other than TOKIO MARINE are legally responsible for the claims and relief alleged and sought in the Underlying Actions and/or are legally responsible for the claims and relief alleged and sought in the Complaint.

8. CITY OF FRESNO failed to exercise reasonable diligence, mitigate, minimize or avoid any loss it allegedly sustained.

9. CITY OF FRESNO's claims violate the applicable terms and provisions of the California Insurance Code, including but not limited to Sections 22, 250, and/or 533 and/or California Civil Code section 1668.

10. CITY OF FRESNO has unclean hands.

**6. Status of Matters Presently Before the Court**

No matters are currently pending before the Court.

**7. Discovery Plan**

    **a. Exchange of Initial Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)(1)**

The parties propose to exchange Initial Disclosures on September 24, 2018.

    **b. Cut-Off for Non-Expert Discovery**

The parties agree to the cut-off for non-expert discovery on June 28, 2019.

    **c. Expert Disclosure**

The parties agree to the expert disclosure date as July 15, 2019 and the rebuttal expert witness disclosure date August 12, 2019.

    **d. Cut-Off for Expert Discovery**

The parties agree to the cut-off for expert discovery on September 16, 2019

    **e. Proposed Changes In Limits On Discovery Imposed by Federal Rule of Civil Procedure 26(b); 30(a)(2)(A), (B) or (C); 30(d); or 33(a)**

At this time, Plaintiff does not anticipate the need to propose any changes in the limits imposed by the Federal Rules of Civil Procedure.

TOKIO MARINE states that based on the allegations of the Underlying Actions, the CITY OF FRESNO has been aware of the potential for its actions to result in damage to homes in Fresno or

other injury dating back at least until 1998. TOKIO MARINE believes that the current limitations on discovery imposed by the Federal Rules of Civil Procedure may be insufficient to allow TOKIO MARINE the discovery that it requires to defend this litigation in its entirety. TOKIO MARINE believes that it should be allowed to serve up to 40 interrogatories on the CITY OF FRESNO and depose up to 20 witnesses without seeking additional leave of Court.

### f. Need for Protective Order Relating to Discovery

Given the sensitive nature of this dispute, the parties believe that a Protective Order will be required.

### g. Issues Regarding Timing, Sequencing, Phasing or Scheduling of Discovery

Plaintiff does not believe any special sequencing, phasing or scheduling of discovery will be need in this matter.

TOKIO MARINE believes that discovery and trial of this litigation should be bifurcated. In particular, TOKIO MARINE believes that this Court should first determine whether coverage is provided under the POLICY before addressing issues of bad faith. If no contract benefits are found to be owed, then there can be no finding of bad faith and therefore, discovery and trial on these issues would be unnecessary. This approach would serve the interests of judicial economy and eliminate the need for unnecessary litigation activities and expense.

### h. Discovery Necessary Outside of the United States

At this time, the parties do not anticipate any discovery outside of the United States.

### i. Video/Sound Recorded Depositions

Plaintiff anticipates video and/or sound recording of depositions in connection with depositions taken outside of California.

TOKIO MARINE may video and/or sound record depositions.

### j. Date for Mid-Discovery Status Report and Conference

The parties propose a mid-discovery report and conference of February 4, 2019.

### 8. Discovery Related to Electronic, Digital and/or Magnetic Data

At this time, the parties do not anticipate that any special arrangements need to be taken with respect to the discovery regarding electronic, digital and/or magnetic data.

**9. Dates Agreed to By All Counsel**

| | |
|---|---|
| Non-Dispositive Motions: | To be filed no later than September 16, 2019 |
| Dispositive Motions: | To be filed no later than October 13, 2019 |
| Pre-Trial Conference Date: | January 20, 2020 |
| Trial Date: | March 30, 2020 |

**10. Settlement Discussions**

The parties believe that settlement discussions are premature.

**11. Jury Trial**

Plaintiff has requested a jury on all issues so triable. TOKIO MARINE has not requested a trial by jury.

**12. Trial Estimate**

The parties agree on a trial estimate of 10 days.

**13. Use of Magistrate Judge Pursuant to 28 U.S. C. Section 636(c)**

The parties do not agree to use of a magistrate pursuant to 28 U.S.C. section 636(c).

**14. Bifurcation**

Plaintiff does not see the need for bifurcation of issues at this time, other than to allow for evidence of net worth to be made after a finding of liability sufficient to impose punitive damages in accordance with California Civil Code Section 3294.

TOKIO MARINE will move to bifurcate discovery and trial on issues relating to coverage, on the one hand, and bad faith, on the other. Further, if trial of the issues of bad faith is required, it will seek to bifurcate the issue of punitive damages from liability.

**15. Related Matters**

Plaintiff has filed a similar coverage/bad faith action against ILLINOIS UNION INSURANCE COMPANY, in this District, Case No.: 1:18-CV-00573-LJO-SKO .

TOKIO MARINE believes that discussion concerning coordinating or consolidating CITY OF FRESNO's coverage/bad faith action against ILLINOIS UNION INSURANCE COMPANY, Case No.: 1:18-CV-00573-LJO-SKO, is required in order to avoid inconsistent positions on coverage and/or inconsistent results.

Dated: August 21, 2018

                    WILKINS, DROLSHAGEN & CZESHINSKI LLP

By   */s/ James H. Wilkins*
      James H. Wilkins
      Attorneys for Plaintiff, CITY OF FRESNO

Dated: August 21, 2018

                    TRESSLER LLP

By   */s/ Linda Bondi Morrison*
      Linda Bondi Morrison
      Attorneys for Defendant, TOKIO MARINE SPECIALTY INSURANCE COMPANY